# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**ANDREA DAVIS for**
**I. D., a minor,**

        **Plaintiff,**

v.                                              Case 1:13-cv–1264-cgc

**MICHAEL ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

## ORDER REVERSING THE DECISION OF COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Plaintiff filed this action to obtain judicial review of her child's application for supplemental security income ("SSI") under XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381-1385. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff filed an application[1] for SSI benefits on December 26, 2007 on behalf of her minor child ("I. D."). Her claim was denied initially and upon reconsIderation. A hearing was held on

---

[1] Plaintiff had additionally filed two previous applications for benefits on behalf of I. D. on February 1, 2006 and April 17, 2007. (R. at 20). Plaintiff's counsel requested that the ALJ, on remand, reopen these prior claims and amend the alleged onset date to the earliest date alleged. The ALJ concluded that Plaintiff alleged the same onset date in all four applications for benefits, that there were no conditions upon which they should be reopened, and that those decisions should remain final.

October 30, 2009 before the Administrative Law Judge ("ALJ"). On February 3, 2010, the ALJ denied Plaintiff's request for review. On March 11, 2011, the Appeals Council remanded the case to the ALJ for further administrative action.

On March 25, 2010, Plaintiff filed another application for SSI benefits. A hearing was held on August 26, 2011 before the ALJ who determined that the remand rendered the subsequent claim to be "duplicative" and associated the claims in accordance with the Order of the Appeals Council. A hearing was held on August 26, 2011 before the ALJ. On April 9, 2012, the ALJ found that I. D. was not disabled under the Act. The Appeals Council then denied Plaintiff's request for review. Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff then filed this action requesting reversal and/or remand of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g).

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." (*Id.*) The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make

credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

I. D. was born on October 29, 2005 and was an older infant/toddler on the initial application date and was a preschooler as of the date of the ALJ's decision. (R. at 23).

The ALJ determined as follows: (1) the claimant has not engaged in substantial gainful activity at all times relevant to this decision; (2) the claimant has severe impairments of attention deficit hyperactivity disorder ("ADHD") and asthma; (3) the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the claimant does not have an impairment or combination of impairments that functionally equals the severity of a listing; and, (5) the claimant has not been disabled, as defined by the Act, since December 26, 2007.

Under the Act, an individual under the age of eighteen shall be considered disabled for the purposes of the Act if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). Notwithstanding this definition, no individual under the age of eighteen who engaged in substantial gainful activity may be considered to be disabled. (*Id*.)

The sequential evaluation process requires a consideration of the following: (1) whether the child is working; (2) whether the child has a medically determinable impairment(s) that is severe;

and, (3) whether the child's impairments meet, medically equally, or functionally equal the listings. 20 C.F.R. 416.924(b)-(d). To consider whether a child functionally equals a listing involves an evaluation under six functional areas, which are referred to as "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself or herself; and, (6) health and physical well-being. 20 C.F.R. § 926a(b)(1)(I)-(vi). It will be determined that the child's impairment(s) functionally equal the listing if the child has marked limitations in two of the domains or extreme limitations in one domain. 20 C.F.R. § 926a(d). If the child does not meet any of the three criteria of the sequential evaluation, the child will be found not to be disabled. 20 C.F.R. 416.924(a).

On appeal to this Court, Plaintiff asserts the following: (1) the ALJ erred in finding that I. D. was not disabled by his physical and mental impairments; (2) the ALJ declined to follow the order of the Appeals Council and the Appeals Council failed to consider evidence regarding the consolidated claim period, appearing to have mistaken the claim for a new, and not remanded, matter; (3) the ALJ erred in failing to properly evaluate, assign and set forth good reasons for the weight attributable to the opinions of all sources, especially the treating physicians; (4) the ALJ failed to provide any discussion or explanation for his finding that none of claimant's impairments satisfy any listing; (5) the ALJ erred using boilerplate language that has been held to be insufficient, especially in dismissing I. D.'s mother's testimony; (6) the ALJ gave no weight to the findings and opinions of the examining specialist because he assumed that one typographical error in the opinion meant that the report was entirely boilerplate while making no effort to contact the source for clarification; and, (7) the ALJ's decision is not supported by substantial evidence.

**I. Whether the ALJ erred in following the Appeals Council's remand instructions**

The Court will begin by addressing Plaintiff's claim that the ALJ failed to follow the Appeals Council's instructions on remand. There is "disagreement amongst federal courts as to whether an ALJ's failure to follow the Appeals Council instructions may serve as an independent ground for reversal." *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014) (citing cases). The Sixth Circuit does not appear to have had the opportunity to address this question, and District Courts within the Sixth Circuit have disagreed on the issue. (*Id.*) At least one court has concluded that an ALJ's failure to follow the dictates of the Appeals Council's instructions constitutes an error requiring remand. *See Salvati v. Astrue*, 2010 WL 546490 (E.D. Tenn. Feb. 10, 2010).

However, other courts have determined that Section 405(g) "does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process." *Bobby D. Dishman v. Michael J. Astrue*, No. 4:08-cv-58, 2009 WL 2823653, at *10-*11 (Aug. 27, 2009) (citing *Richard Brown v. Comm'r of Soc. Sec.*, No. 1:08CV183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009)); *Joanne Riddle v. Michael J. Astrue*, No. 2:06-00004, 2009 WL 804056 (M.D. Tenn. Mar. 25, 2009) ("The scope of the district court's review authority is to determine whether the Commissioner's findings of fact are supported by substantial evidence in the record, and whether the correct legal standards were applied. Because the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand."); *Susan M. Bass v. Michael J. Astrue*, No. 1:06-cv-591, 2008 WL 3413299, at *4 (M.D.N.C. Aug. 8, 2008) ("The Court does not review internal agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order.") (citations omitted).

Upon review, this Court is persuaded by the reasoning of the courts that have concluded that Section 405(g) does not provide this Court with authority to review internal agency-level proceedings. This reasoning is particularly persuasive in the instant case as the Appeals Council reviewed the ALJ's April 9, 2012 decision following the original remand and denied Plaintiff's request for review. *See Brown*, 2009 WL 465708 at *6 ("By failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's . . . review to be in compliance with the Council's previous order of remand . . . ."). Accordingly, the Court declines to address this issue.

## II. Whether the ALJ's Opinion was supported by substantial evidence

### A. Medical Source Opinion Evidence

Plaintiff asserts that the ALJ erred in failing to properly evaluate, assign, and set forth good reasons for the weight attributed to the opinions of the medical sources, especially the treating physician. Plaintiff specifically mentions that the ALJ erred as to the weight accorded to Dr. Yancey and Dr. Pickering's opinions; however, she further generally states that the ALJ also erred by assigning "the least weight to the DDS reviewers and examiners and most to the treating source, referral specialist and examining specialist."

The ALJ's assessment of medical source opinions must follow 20 C.F.R. § 416.927(c), which contain six factors. First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. § 416.927(c)(1).

Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [her] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports

6

of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. § 416.927(c)(2) & 416.927(c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2).

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. § 416.927(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting explanations for their opinions." (*Id.*) The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." (*Id.*)

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. § 416.927(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. § 416.927(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her

7

attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(6).

### I. Dr. Yancey

With respect to Dr. Yancey, the ALJ noted that she has treated I. D. since infancy. (R. at 24, 28; *see* Exh. 8F & 9F). The ALJ acknowledged that Dr. Yancey opined that the claimant meets listing 103.03 (asthma) and functionally equals the listings due to marked limitations in the domains of "caring for yourself" and "health and physical well-being." (R. at 28; *see* Exhs. 19F & 27F). Yet, the ALJ noted that the introduction to the respiratory listing provides, in pertinent part, that "the asthma listing specifically includes a requirement for continuing signs and symptoms *despite a regimen of required treatment*." (R. at 28; *see* Listing 103.03A). The ALJ then extensively details the evidence contained in the record of non-compliance with treatment, including Plaintiff's failure to administer medication to I. D. and her failure to keep appointments on his behalf, including with a pediatric pulmonologist. (R. at 26). The ALJ further notes that Dr. Yancey herself requested a social work consultation, which the ALJ concluded would not have been done "[a]bsent concerns about the claimant's care at home." (*Id*.) The ALJ then discusses that the social worker contacted the Center for Prevention of Child Abuse to furnish Plaintiff with information on "classes addressing parenting skills and visits." (R. at 26).

For these reasons, the ALJ concluded that Dr. Yancey's opinions as to whether I. D.'s impairments meet, medically equal, or functionally equal a listing should not be accorded controlling weight because they "ignore[] treatment non-compliance." (R. at 28). Additionally, the ALJ noted that Dr. Yancey's records "document improvement in the claimant's asthma" and are "inconsistent with the record as a whole." (R. at 28). Thus, he determined that Dr. Yancey's opinions should be

8

accorded "little weight." (*Id.*)

Although the ALJ did address Dr. Yancey's opinions in considerable depth, 20 C.F.R. § 416.927(c)(2) & 416.927(c)(2)(I)-(ii) require that, if a treating physician's opinions are not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. The ALJ did not undertake this analysis but simply dismissed Dr. Yancey's opinions for not sufficiently considering Plaintiff's non-compliance with her child's recommended treatment. The ALJ also did not discuss whether Dr. Yancey's opinions were based upon any medical signs or laboratory findings as required by 20 C.F.R. § 416.927(c)(3).

Accordingly, the Court concludes that the ALJ erred in weighing the medical source opinion testimony of Dr. Yancey by according it little weight primarily on the basis of Plaintiff's non-compliance without addressing the remaining required factors. Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to reconsider Dr. Yancey's medical source opinions under 20 C.F.R. § 416.927(c). The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr. Yancey's opinions.

### ii. Dr. Pickering

With respect to Dr. Pickering, the ALJ noted that he administered a psychological evaluation, which included reviewing the complete disability file. (R. at 20, 28). Dr. Pickering found that I. D. was "distractible, hyperactive, intrusive, inattentive, asked off-topic questions, and made unrelated comments." (R. at 28). Dr. Pickering further considered Plaintiff's reports of his behavior and her

9

reports of his teachers' comments as to his behavior and found that the diagnosis of ADHD was appropriate, apparently relying upon the criteria in the *Diagnostic and Statistical Manual of Mental Disorders*, *Fourth Edition—Text Revision* ("DSM-IV-TR"). (*Id.*) Dr. Pickering also opined that I. D.'s ADHD "resulted in marked limitations in three domains." (*Id.*) However, the ALJ noted that Dr. Pickering's report also contained a notation stating that "Ms. Murphy also displays oppositional behavior as well." (*Id.*; *see* Exh. 38F). The ALJ concluded that, as Dr. Pickering "referenced another individual, it is impossible to determine which of the inattention symptoms apply to the claim" and, "[m]ore significantly, this reference illustrates his boilerplate approach to psychological examinations." (R. at 28). Thus, the ALJ concluded that, "[a]lthough the medical evidence supports a diagnosis of ADHD, the undersigned affords no weight to his opinion with respect to functional equivalence because it is unsupported by the record as a whole." (*Id.*)

Upon review, the ALJ's conclusions regarding Dr. Pickering generally comply with 20 C.F.R. § 416.927(c) and address the appropriate factors. However, the ALJ then dismisses Dr. Pickering's findings because he referred to "Ms. Murphy" and because his opinions exemplify a "boilerplate approach" and are "unsupported by the record as a whole." (R. at 28). Although Plaintiff argues that the ALJ simply dismissed Dr. Pickering's opinion based upon a typographical mistake, the Court finds that a reference to an individual who is neither the claimant nor the claimant's guardian does clearly raise doubts as to the accuracy of the report as to I. D. Yet 20 C.F.R. § 416.919p states that, if a report from a consultative examiner is "inadequate or incomplete," the ALJ "will contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." The ALJ failed to do so and instead simply disregarded the

consultative examiner's report based upon the reference to an individual by an incorrect name—an error which appears may have been extremely simple to correct by contacting Dr. Pickering. Additionally, this error is not harmless because Dr. Pickering's opinions, if credited, would establish that I. D.'s impairment of ADHD functionally equaled a listing because he had marked impairments in three domains—acquiring and using information, attending and completing tasks, and health and well being. (R. at 1299-1300).

Accordingly, the Court concludes that the ALJ erred in weighing the medical source opinion testimony of Dr. Pickering. Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to obtain a revised report from Dr. Pickering under 20 C.F.R. § 416.919p clarifying his reference to "Ms. Murphy" and to reconsider his medical source opinions under 20 C.F.R. § 416.927(c). The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr. Pickering's opinions.

### iii. Other Medical Source Opinions

Plaintiff further generally asserts that the ALJ erred in considering all medical source opinion evidence. Plaintiff has not raised specific issues on appeal as to each of the remaining medical sources but simply stated that the ALJ utilized "boilerplate" language and did not adequately address and weigh their opinions. Upon review, the Court has already determined that remand is appropriate to reconsider the opinion of I. D.'s treating physician, Dr. Yancey, and his examining psychologist, Dr. Pickering. Once such a review is completed, the ALJ may elect to reconsider the remaining medical source opinions under 20 C.F.R. § 416.927(c).

*B. Plaintiff's Credibility*

Plaintiff asserts that she competently and credibly testified at the hearing before the ALJ regarding I. D.'s impairments and limitations but that the ALJ dismissed her testimony as not credible with "boilerplate language that has been the subject of numerous remands" and without complying with Social Security Ruling 96-7p.[2]

Social Security Ruling 96-7p sets forth how the credibility of an individual's statements should be considered and provides, in pertinent part, as follows:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual

---

[2] Social Security Ruling 96-7p has since been superseded by Social Security Ruling 16-3p effective March 16, 2016. However, the United States Supreme Court has held as follows: "Retroactivity is not favored in the law. Thus . . . administrative rules will not be construed to have retroactive effect unless their language requires the result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has stated that the Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations." *Combs v. Comm'r of Soc. Sec.*, 459, F.3d 640, 642 (6th Cir. 2006). Additionally, the Sixth Circuit has stated that it is "not aware of any constitutional or statutory requirement that the Administration apply its policy interpretation rulings to appeals then-pending in the federal courts, absent, of course, ex post facto or due process concerns not present here." *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) (addressing Social Security Ruling 06-03P). The *Cruse* court further noted that, unless the text of the Social Security Ruling or another source demonstrates the "intent on the part of the Administration to apply [a Social Security Ruling] to appeals pending in the federal courts," it should not be applied. (*Id*.) Although the Sixth Circuit does not appear to have directly addressed the retroactivity of Social Security 16-3p, *see Dooley v. Comm'r of Soc. Sec.*, —Fed. Appx. —, No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. July 28, 2016), the courts within the Sixth Circuit that have squarely considered this question have concluded that it should not be so applied, *see, e.g., Ammi E. Winthrow v. Comm'r of Soc. Sec.*, No. 2:15-cv-1437, 2016 WL 4361175, at *8 n.5 (S.D. Ohio Aug. 16, 2016); *Stephanie P. Baker v. Comm'r of Soc. Sec.*, 2:15-cv-2687, 2016 WL 4361174, at *5 n.2 (S.D. Ohio Aug. 16, 2016); *Jill A. Cameron v. Carolyn W. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p.

In the instant case, the ALJ summarized Plaintiff's testimony as follows as to I. D.'s impairments:

> Ms. Davis testified that the claimant's asthma is better controlled, but smoke, heat, and chemicals are triggers. She stated her son receives treatment for ADHD from multiple sources, and received a medication adjustment in July 2011 because of unresolved problems. Ms. Davis testified he has difficulties paying attention, and as a result, does not complete tasks. She stated her son is also impulsive, very active, and requires constant watching. Ms. Davis testified she did not enroll him in preschool. Elaborating, she stated that she was afraid of this due to the claimant's medications and his difficulties. Ms. Davis testified that instead she, "kind of worked with him at home." She stated he recently entered kindergarten, and has undergone testing. Ms. Davis testified her son's teacher noticed difficulties with attention and focus.

(R. at 25).

The ALJ then stated as follows with respect to Plaintiff's credibility:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting affects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listing . . . .

(R. at 25-26).

Upon review, the ALJ summarized Plaintiff's testimony but then provided only a conclusory analysis as to why she was deemed not to be credible. Such an analysis does not comply with the express requirements of Social Security Ruling 96-7p.

Accordingly, the Court concludes that the ALJ erred in considering Plaintiff's credibility. Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to

13

Sentence Four of 42 U.S.C. § 405(g) for the ALJ to reconsider Plaintiff's credibility pursuant to Social Security Ruling 96-7p. The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Plaintiff's testimony.

**III. Whether the child's impairments meet, medically equally, or functionally equal the listings**

Plaintiff asserts that, after erring in according the weight to the medical source opinion evidence and erring in assessing Plaintiff's credibility as to her son's impairments, the ALJ continued to err in his consideration of whether I. D.'s impairments met, medically equaled, or functionally equaled a listing. As this Court has already determined that remand is appropriate for the reasons set forth above, the Court will not continue to address the ALJ's legal conclusions, as they were based upon the ALJ's findings that were insufficient under 20 C.F.R. § 416.927(c) and Social Security Ruling 96-7p, which is the subject of the remand. However, the ALJ is instructed on remand to perform an evaluation of whether I. D.'s impairments meet, medically equally, or functionally equal the listings that complies with the Act, including all applicable regulations and rulings. Such an evaluation should set forth the requirements of the applicable listings and detail whether I. D.'s impairments meet, medically equal, or functionally equal them.

**IV. Conclusion**

For the reasons set forth herein, the decision of the Commissioner is REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED** this 14th day of October, 2016.

            s/ Charmiane G. Claxton
            CHARMIANE G. CLAXTON
            UNITED STATES MAGISTRATE JUDGE